Smith, J.
The question in these two cases, which were heard together, is, whether under the law, and the evidence presented, the plaintiff company is entitled to an injunction restraining the defendant companies, or either of them, from attempting to place upon the poles of such plaintiff, heretofore erected by it in the streets and alleys of the city of Cincinnati, for the carrying on of its business, the wires of such defendant companies, to be used by them respectively, in transmitting electricity for power and lighting purposes. The proper determination of this question, in our judgment, depends greatly upon the answer which should be given to the inquiry, what are the rights of these several companies to the use of the streets, and alleys of the city for the purposes aforesaid. And we state the conclusion at which we have arrived as to this matter.
First, as to the Brush Electric Light Co. The ordinance of the city council, granting to it the right to erect and maintain in the streets, avenues, alleys and public grounds of the city, poles and appurtenances necessary for furnishing light by means of electricity, was passed March 3, 1882. At that time there was not, nor until May 12, 1886, (83 Ohio L. 143) was there any statute of the state, which expressly conferred upon the municipal authorities of a city the right to make such a grant — and we are of the opinion that in no one of the clauses of section 1692, Revised Statutes, which is the general statute pointing out and enumerating the powers granted to municipal corporations, or by the provisions of sections 2492, or 2640, to which our attention has been called by counsel for the plaintiffs, is any such power conferred, even by implication. The clear doctrine of the law is, that municipal corporations have such powers only as are expressly conferred by the legislature, “ and those which are necessarily or fairly implied in, or *342 incident to the powers expressly granted, or those essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power, is resolved by the courts against the corporation, and the power is denied.” 2 Dillon on Municipal Corporations, 4th Ed. 145; 45th Ohio St. 118.
The fact that in 1886 the legislature saw proper to enact a law expressly conferring upon municipal corporations the power to make such grants, is in the nature of a legislative declaration that it had not before that time been done, and that the law then passed was necessary to enable them to do so. It follows, therefore, from what we have said, that in our opinion the plaintiff company took nothing by the ordinance of 1882.
But it is claimed that even if the municipal authorities at that time had no power to make such a grant, yet, that ever since the passage of the law of 1886, they have fully recognized the right of the plaintiff company to all the privileges attempted to be granted by the ordinance of 1882, and have, on divers occasions, given it permission to erect and maintain its poles now in the streets of the city, and that the company has thus acquired the right to have them there, and under their own control, even as against the city, but certainly as against the defendant companies, who, it is claimed, are not in a position, and have no standing to contest this right so claimed.
As to this we may say, that during all of this time, sections 2227 and 2231, Revised Statutes, have been in force. Section 2227 provides, substantially, that no grant of the use of a street or highway in the city shall be made for the purpose of a street railroad, or for any other purpose whatever, unless first recommended by the Board of Public Affairs ; and section 2231 provides that no resolution or ordinance recommended to council by such board, and there amended, shall take effect until approved by said board ; and where it grants *343 a franchise, it must be approved by four members of the board. There is nothing whatever to show, that after power was given to the municipal authorities to make such grant, any action required by these two sections was taken. And it is difficult to see how the alleged grant of this franchise is to become valid and binding on the city, or the public, by a mere acquiescence of the public authorities in its use for a while, when the statute is express that it can be granted in but one mode.
But there is no such proof of continued acquiescence on the part of the municipal authorities as justifies the claim of the plaintiff. It is shown that on the 2nd of November, 1889, the Board of Public Affairs directed the City Engineer “ to withdraw all permits to erect electric light poles, heretofore used, until further orders;55 and on November 8, 1889, such Board by resolution provided that they would permit only one line of poles for electric lighting or power purposes,, to be erected on any one street. And the Board also provided thereby, among other things, that where any street was already occupied by such line of electric poles, that it would allow the company to whom the prior permit was granted, to maintain the line of poles, and would authorize any other company to which a permit had been granted to occupy portions of such territory, to use the poles already on the street, under the terms of the general ordinance of the city. And in a subsequent clause it is provided that when a street is so occupied, the second company applying for the privilege, will be authorized, so far as the chief electrician and chief engineer may deem the same practicable, to occupy the lines of poles of any other company that may be upon such street * * * under the terms of the general ordinance.
This general ordinance referred to is dated October 18, 1889, and contained substantially similar provisions, and fixed the terms upon which other companies might use the poles of the company which had erectéd them, viz., by paying a fair proportion of the original cost of the erection thereof, and a *344 monthly rental equivalent to a fair proportion of the cost of the erection and maintenance thereof.
Under this action of the Board of Public Affairs and of the council, it is shown that the plaintiff company has obtained permission to erect by far the larger number of its poles now in the streets of the city, and that the defendant companies have also received like permits, and particularly that they have been authorized by the Board of Public Affairs and its engineer to occupy the poles of the plaintiff, the use of which by them, the plaintiff company is seeking to enjoin, and have offered to comply with the terms fixed by the ordinance. It would seem, then, from these statements, that the plaintiff company is occupying the streets of the city, not under a valid or irrevocable grant, but by the mere license and permission of the municipal authorities, and which license is coupled with the condition, impliedly at least, accepted and acted upon by such company, that other companies to which like permits should be granted, should have the privilege of stringing its wires thereon. Can it claim not to be bound by this condition ?
Since the hearing of the evidence and the oral argument, counsel for the plaintiff' have suggested that this ordinance of 1889 was not duly passed, and have presented to us, a certified transcript of the proceedings of the boards of the common council, which, if correct, would go to support this claim. But this, w-e think, is not a matter of importance in this litigation, as the same question would be presented, and the same con7 elusion reached, if the action of the Board of Public Affair's stood alone.
It was strenuously urged too, that neither of the defendant companies, under the terms of their charters, was authorized to carry on the business of furnishing eleetric light and power, and could not for this reason lawfully place their poles in the streets. We only deem it necessary on this point to say, that we are of the opinion that this is not the case now; the Jones Bros. Company having by an amendment of its charter, the undoubted right at this time. But the resolution of the Board *345 of Public Affairs, under which the plaintiff company is now operating, made it a condition that the poles erected by it, should be subject to the use of other companies to whom permits to occupy portions of such territory had been granted. And such permits have been given to these two companies, as is conceded, and this would seem to estop the plaintiff from saying that they are not so authorized.
It has also been urged that under the provisions of the act of 1886, (sec. 8035-233 S. & B. Stat.) which gave to a company organized for the purpose of supplying electricity for power purposes, and for the lighting the streets and public and private buildings of a city, village or town “ the right to construct lines for conducting electricity through the streets, alleys, etc., “ with the consent of the municipal authorities of the city, village or town, and under such reasonable regulations as they may prescribe,” the actual consent of such municipal authorities is still absolutely essential, and that as such consent has not been given by ordinance to the defendant companies, they can not obtain such right by resort to the probate court under the provisions of sec. 3461, Rev. Stat.,— that section not applying to such companies.
For the reasons hereinbefore stated, we think that a decision of this question is not necessary to a proper adjudication of this case. We have found that neither of these three companies is now occupying the streets under the provisions of a valid ordinance, but that all are standing on the same footing, and under the terms of a license, which binds all of them when in the judgment of the city authorities it is necessary to do so, to receive onto their poles the wires of another company, on compliance with certain stipulations. And though the question as to the right of electrical light and power companies to resort to the probate court under the terms of sec. 3461 has been fully and ably argued, and we have given much consideration to it, we have come to the conclusion that we are not called upon to decide it, and 'that we should not do so, for this additional reason, viz., that it appears that other com- *346 parties, taking the view that such proceedings were warranted by law, have heretofore, like the defendant companies, instituted proceedings in the probate court, and obtained adjudication, which, if valid, gave to them the rights claimed, and on the faith of which very large investments have been made. Such companies are not before us in this case, and for the reasons stated we express no opinion upon the question, leaving its determination to that tribunal to which the question may more properly be submitted, if its determination should hereafter become necessary.
John W. Warrington, D. Wulsin, and A. B. Champion, for plaintiff.
Judge Harmon, Lawrence Maxwell, Jr., and Mr. Pogue, for defendants.
It seems to us manifest that it is, and it certainly should be the law, that the right to decide as to the use of the streets of a city by the corporations of this character, should be entrusted to the municipal authorities, and the use thereof by such companies, in the language of the statute, should be “ under such reasonable regulations as they may prescribe.” The idea that any number of such companies may erect their poles in the streets as they please, of course can not be tolerated. It would be destructive to the interests of the public. It would seem that the regulations and provisions under which these companies are now using the streets of the city are reasonable and proper — but if not, it can only be said that the plaintiff has accepted the license subject to those terms, and must abide by them, so far as this case is concerned. Our conclusion is that the reliief sought should be refused, and the petitions be dismissed.